IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID E. SMITH,                              )    Civil No. 6:12-cv-02100-JE
                                             )
                        Plaintiff,           )
                                             )    OPINION AND ORDER
            v.                               )
                                             )
                                             )
CAROLYN W. COLVIN,                           )
Acting Commissioner of Social Security,      )
                                             )
                        Defendant.           )
_____ )

        Drew L. Johnson
        1700 Valley River Drive
        Eugene, OR 97405

        Kathryn Tassinari
        Harder, Wells, Baron & Manning, P.C.
        474 Willamette, Suite 200
        Eugene, OR 97401

            Attorneys for Plaintiff

S. Amanda Marshall, U.S. Attorney
Adrian L. Brown, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204-2902

Richard A. Morris
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

      Plaintiff David Smith brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial

review of a final decision of the Commissioner of Social Security (the Commissioner) denying his

application for Supplemental Security Income (SSI) benefits under the Social Security Act (the

Act).  Plaintiff seeks an Order remanding the action to the Social Security Administration (the

Agency) for an award of benefits.

      For the reasons set out below, the Commissioner's decision is affirmed.

## Procedural Background

      Plaintiff filed an application for SSI on October 15, 2009, alleging that he had been

disabled since January 1, 1990.

      After his claim had been denied initially and on reconsideration, Plaintiff timely requested

an administrative hearing.

      On August 4, 2011, a hearing was held before Administrative Law Judge (ALJ) Michael

Gilbert.  Plaintiff and a Vocational Expert (VE) testified at the hearing.

      In a decision filed on October 19, 2011, ALJ Gilbert found that Plaintiff was not disabled

within the meaning of the Act.  That decision became the final decision of the Commissioner on

September 19, 2012, when the Appeals Council denied Plaintiff's request for review.  In the

present action, Plaintiff challenges that decision.

## Background

Plaintiff was born on January 3, 1960, and was 49 years old when he filed his application

for SSI benefits.  He dropped out of high school in his sophomore year and served in the Army

for one year.  Plaintiff earned a small amount of money collecting cans and bottles, and had no

past relevant work experience.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary

of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial

gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is

not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's

case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe

impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant

has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step

Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the

Commissioner next determines whether the claimant's impairment "meets or equals" one of the

presumptively disabling impairments listed in the Social Security Administration (SSA)

regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(f).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

**Medical Record**

Plaintiff sought treatment for chest pain and anxiety at an emergency room four times during October 2007.  No acute problems were noted during these visits.  During the last visit, Ativan was prescribed and Plaintiff was advised to contact a free clinic and look for a primary care physician.

Plaintiff sought emergency care for chest pain and shortness of breath in early November 2007.  A treating physician noted that Plaintiff was homeless and was living in his vehicle.  Plaintiff was described as extremely anxious and carpopedal spasms and hyperactive motor activity were noted.   Plaintiff was diagnosed with anxiety and hyperventilation syndrome, and lorazepam and Ativan were prescribed.

On November 29, 2007, Dr. Rick Wopat began treating Plaintiff for anxiety.  Plaintiff reported that he drank four beers per day and indicated that he worked part-time.  Dr. Wopat diagnosed benign hypertension and generalized anxiety disorder and advised Plaintiff to reduce his alcohol consumption.

Plaintiff reported acute persistent anxiety when he was seen by Dr. Christopher Collier, another physician in Dr. Wopat's office, on July 23, 2008.  Plaintiff had no insurance.  He reported severe insomnia, difficulty concentrating, and decreased interest in his usual activities.  He said that he had been unable to maintain employment because of persistent anxiety, and reported that he supported himself by doing odd jobs for his friends and family.  Dr. Collier noted that Plaintiff had an extremely anxious disposition and a blunted affect, and prescribed Celexa.  He thought that Plaintiff's use of a prescribed beta blocker might be contributing to his depressive symptoms.

In his notes of a visit on August 17, 2008, Dr. Collier indicated that Plaintiff had an "INTENSELY anxious disposition," and had reported palpitations, depression, and decreased concentration and memory.  Dr. Collier stated that Plaintiff had a slightly blunted affect, a decreased attention span, and decreased concentration.  He thought that hypothyroidism might be contributing to Plaintiff's severe anxiety, but that he would likely experience significant anxiety even in the absence of medical problems.

In his notes of a visit on August 29, 2008, Dr. Collier indicated that, though Plaintiff's anxiety had decreased somewhat, it remained "rather significant nonetheless."  Plaintiff had a slightly blunted affect and continued to have "a lot of shakes."  Plaintiff told Dr. Collier that he smoked marijuana three times a week, and that his wheezing was worse after he smoked.  Dr. Collier indicated that Plaintiff had at least mild to moderate persistent asthma.  He increased Plaintiff's dose of Celexa.  Dr. Collier indicated that he would prefer to see Plaintiff again in less than six weeks, but that Plaintiff was a "self-pay" and could not afford to see a doctor  more frequently.

In his notes of a visit on October 8, 2008, Dr. Collier indicated that Plaintiff's anxiety, depression, and energy levels had improved, but that he continued to experience severe insomnia.  With treatment, Plaintiff's essential tremor had improved slightly and his blunted affect had improved significantly.

During a visit on November 21, 2008, Plaintiff reported that he felt much less anxious, had more energy, was sleeping better, had better concentration, and was functioning better in his daily activities.  Dr. Collier noted that Plaintiff's essential tremor had almost completely resolved with the use of clonozepam.

Plaintiff reported increasing anxiety and fatigue during a visit to Dr. Collier on April 23, 2009. Dr. Collier noted that Plaintiff was very calm and minimally anxious, and had a moderately blunted affect. Dr. Collier opined that the benefit Plaintiff had derived from Celexa seemed to have plateaued or diminished, and encouraged Plaintiff to start taking Symthroid again.

In his record of a visit on July 14, 2009, Dr. Collier noted that, though Plaintiff's essential tremor had initially improved, his tremors had worsened again during the previous few months. Plaintiff reported that he was experiencing severe night sweats. Dr. Collier discussed this and Plaintiff's hypothyroidism, hypertension, depression, and essential tremor. He opined that Plaintiff's medical "peculiarities," including severe hypertriglyceridemia, hypothyroidism, recurrent headaches, premature severe hypertension, and a "bewildering" iron deficiency required further evaluation by an endocrinologist. Because Plaintiff had no insurance and could not afford an endocrinology consultation, Dr. Collier advised him to seek care from a community outreach clinic.

During a visit on September 8, 2009, Plaintiff told Dr. Collier that his night sweats had worsened and that his excessive crying, which had previously decreased with the use of Celexa, had resumed. Dr. Collier observed that Plaintiff's tremor had worsened during the previous few months. He noted that Plaintiff was living in his van, and was "essentially homeless."

During a visit on October 28, 2009, Plaintiff told Dr. Collier that he was extremely anxious, had significant problems sleeping, and was experiencing palpitations and panic attacks. Dr. Collier noted that Plaintiff's affect was moderately blunted, that his attention span and concentration were normal, and that his judgment and insight were fair. He diagnosed

generalized anxiety disorder and added a prescription for Remeron to the Celexa and clonazepam Plaintiff was already taking for anxiety. Dr. Collier indicated that Plaintiff's lack of insurance and inability to pay for medications that cost more than $4 limited treatment options.

Plaintiff established treatment with Dr. John Hein, who worked in Dr. Collier's office, on March 25, 2010. Dr. Hein noted that Plaintiff was currently being treated for hypertension, hyperlipidemia, hypothyroidism, depression, and anxiety. He indicated that Plaintiff was living in his van, was "trying to file for disability," and was "functionally disabled due to his anxiety and mood disorder." Dr. Hein noted that Plaintiff was anxious and had a depressed affect. Plaintiff's blood pressure was not controlled by the medication Plaintiff was taking, and Dr. Hein diagnosed poorly controlled hypertension. He opined that Plaintiff's asthma was mostly asymptomatic, with exacerbations occurring with upper respiratory infections.

At the request of the Agency, Dr. Gale Smolen, a psychiatrist, examined Plaintiff on April 2, 2010. Plaintiff told Dr. Smolen that he had been homeless since 1994, lived mostly in his van, and did "nothing on a regular basis." He reported that he might drink a six-pack of beer at times, but did not do so regularly and did not drink hard liquor. Plaintiff said that smoking marijuana caused anxiety attacks. He said he had not smoked marijuana during the previous three years, and had not smoked marijuana regularly before that time.

Plaintiff told Dr. Smolen that he did not experience auditory hallucinations or paranoid thoughts, but that it seemed as if his brain "would not shut down, particularly at night." He reported that he had experienced his first panic attack three years earlier, and that when it occurred he had thought he was having a heart attack. Plaintiff said that he had experienced four panic attacks during the previous three years. He said that these attacks would sometimes go

OPINION AND ORDER - 8

away immediately, and that sometimes he needed to walk around.  Plaintiff reported feeling a lot

of anxiety, and said that he felt anxious almost every day if he did not take his medications.

Dr. Smolen noted that Plaintiff had an essential tremor which caused his whole body to

shake "pretty much all of the time," and opined that this  "could put people off" because most

people knew that tremors were associated with alcoholism, though Plaintiff's tremors were not.

She stated that  Plaintiff had not been able to sleep well for a long time, and diagnosed a

generalized anxiety disorder and major depression, recurrent, mild to moderate.   Dr. Smolen

opined that Plaintiff could "remember and understand and concentrate and attend," but thought

that he could not "get along well with people on a mental basis" at that time.

During a visit to Dr. Hein on September 3, 2010, Plaintiff reported that his anxiety and

tremors had worsened.  He did not want to take diazepam because he was easily fatigued during

the day and was concerned that the medication would worsen that condition.  Plaintiff reported

intrusive thoughts and difficulty sleeping.  He had obtained better results with lorazepam, but he

could not afford that medication.  Dr. Hein noted that Plaintiff had a resting tremor, but that he

did not have a tremor during motor activity.  He noted that Plaintiff was depressed, and diagnosed

generalized anxiety disorder and major depressive disorder, moderate.

**Testimony**

**Plaintiff**

Plaintiff testified as follows at the hearing before the ALJ.

Plaintiff was 6'6" tall and weighed approximately 225 pounds.  His driver's license had

been revoked the previous year after he received a DUI.  He was in a diversion program but had

not recovered his license because he could not afford assessment for a required treatment

OPINION AND ORDER - 9

program.   Plaintiff had not worked recently, but earned some money picking up cans and bottles and received food stamps.  He used the approximately $100 a month he earned from can and bottle collection to pay for medications, and his friends sometimes purchased the medications he needed for him.  Plaintiff was homeless; sometimes he slept at a friend's house and sometimes he slept at a homeless shelter.  He had lived in his van some of the time in the past, but it could no longer be driven because it  had a cracked windshield and a "blown head gasket."

Plaintiff thought he had been disabled since 1994 or 1995 because of the difficulty he had concentrating and being around other people.   He had been on the Oregon Health Plan earlier, but his coverage had been removed when many people were taken off the Plan in 2003.  Plaintiff received medical treatment at a low-cost clinic in Albany, Oregon.

Plaintiff had been "too stressed out" to apply for another job after being terminated at a restaurant he had worked at for three months in 1993.  Plaintiff had applied for disability benefits in 1996, and had not applied again earlier after that application was denied because filling out the paperwork was too stressful.  He had finally filed the claim at issue in this action because his condition had worsened.  Plaintiff thought that anxiety and stress were the greatest obstacles to his employment.  Being around many people was also difficult for Plaintiff.

Plaintiff testified that he had not consumed alcohol since 2009.  When queried concerning the DUI citation issued to him since that time, he testified that it was "just bad timing," because he had "just happened to" drink some beer on the day he was cited.  He stated that he had not consumed any alcohol since he told the examining psychiatrist that he drank a six pack of beer on several occasions throughout the year.  Plaintiff testified that he had not smoked marijuana during the previous four years, and he had last used marijuana a few days before a urinalysis which was positive for THC had been performed in November 2007.

OPINION AND ORDER - 10

Plaintiff experienced panic attacks "[a]lmost every day or every other day."  The attacks had started in 2006 or 2007, and had motivated Plaintiff to "apply for Social Security again." Some of Plaintiff's medications caused headaches and nausea, and he did not like taking all the medications that had been prescribed.   He sometimes cut the pills in half so his supply would last longer.

**VE**

The ALJ posed a vocational hypothetical describing an individual with Plaintiff's age, education, and work experience who could perform the full range of light work, subject to the following limitations: bilateral handling and fingering were limited to frequent; work was limited to simple, routine, repetitive tasks requiring reasoning at no greater than level 2; and job duties could require no interaction with the public and only occasional interaction with coworkers.

The VE testified that an individual with these functional limitations could work as a basket filler, a bench assembler, or a laundry sorter.  He testified that the basket filler position required occasional coworker interaction, and that none of the listed positions required teamwork. The VE testified that the basket filler and bench assembler jobs required frequent fingering and that the laundry sorter work required occasional fingering.

The VE testified that an individual who could not be around others without interfering with the ability to concentrate, persist, and perform work at pace, who could not do simple routine tasks on a regular and continuing basis, or who would miss work two or more days per month because of mental impairments could not sustain competitive employment.

In response to questioning by Plaintiff's counsel, the VE testified that an individual who was limited to occasional handling could not perform the jobs he had identified.  He testified that an individual who had panic attacks every other day which prevented him from functioning for an

hour could not sustain competitive employment, and that an individual with Plaintiff's work history who was "precluded" from getting along with others because of mental issues probably could not sustain employment. The VE also testified that an individual who had moderate limitations in the ability to maintain social functioning and in concentration, persistence, and pace (with "moderate" defined as preventing performance of work duties up to one-third of the day) would have difficulty meeting production requirements.

Upon further questioning by the ALJ, the VE testified that an individual who could perform light work, limited to occasional handling and fingering and occasional interaction with coworkers, could work as a microbrewery blending tank helper.

## ALJ's Decision

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since applying for SSI on October 15, 2009. The ALJ noted, however, that the medical record included several references to Plaintiff's performance of part-time construction work. The most recent of these appeared in the record of Plaintiff's visit to a clinic on March 25, 2010, which indicated that Plaintiff's occupation was "part-time construction work."

At the second step, the ALJ found that Plaintiff had the following impairments which were "severe" within the meaning of 20 C.F.R. § 416.920(c): essential tremor, major depressive disorder, and general anxiety disorder.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the capacity to perform light exertional level work, subject to the following limitations: he could frequently but not constantly handle and finger bilaterally; could perform simple, routine, repetitive tasks of a complexity requiring no greater than "reasoning level two;" could not have any interaction with the public; and could have no more than occasional interaction with coworkers as part of his work duties. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not wholly credible.

At the fourth step, the ALJ found that Plaintiff had no past relevant work.

At the fifth step of his disability analysis, the ALJ found that Plaintiff retained the functional capacity required to perform jobs that existed in substantial numbers in the national economy. As examples of such jobs, the ALJ cited work as a basket filler, bench assembler, and laundry sorter. Based upon that conclusion, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ failed to properly consider the opinions of treating and examining physicians, erred in finding that he was not wholly credible, and did not meet the burden of establishing that he could perform jobs that existed in substantial numbers in the national economy.

1. **Plaintiff's Credibility**

As noted above, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not wholly credible. Plaintiff acknowledges that there are "some inconsistencies in the record" but contends that, in evaluating his credibility, the ALJ "did not give proper consideration to all the evidence."

**Standards for Evaluating Claimant's Credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment that is reasonably expected to

produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

In evaluating a claimant's credibility, an ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7.   An ALJ may also consider such factors as a claimant's inconsistent statements concerning symptoms and other statements that appear less than candid, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, medical evidence tending to discount the severity of the claimant's subjective claims, and vague testimony as to the alleged disability and symptoms. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

If substantial evidence supports the ALJ's credibility determination, it must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

**Analysis**

Because Plaintiff here produced evidence of impairments that could reasonably be expected to produce some symptoms and there was no affirmative evidence of malingering, the ALJ was required to provide clear and convincing reasons for concluding that Plaintiff was not wholly credible.

The ALJ cited several reasons for concluding that Plaintiff was not wholly credible.  In the first of these, the ALJ observed that Plaintiff's "reporting and testimony was full of inconsistencies."  As examples, the ALJ noted that, though Plaintiff testified that his anxiety began before 1995, he told an emergency room doctor that he did not begin to experience anxiety until 2007.  The ALJ noted that Plaintiff testified that he did not like beer and had not smoked marijuana during the previous four years because it triggered anxiety attacks, and did not drink caffeinated beverages because they triggered migraine headaches.  He cited contradictory evidence in the record, including Plaintiff's reports to medical providers that he drank up to six beers a day a number of times per year, Plaintiff's DUI citation in September 2010, Plaintiff's report to his doctor in 2008 that he smoked marijuana up to three times a week, and Plaintiff's reports that he drank up to 5 caffeinated beverages daily.  The ALJ correctly noted that, though Plaintiff testified that he had not worked or looked for work since 1993, he had told medical providers that he worked part-time in construction.

In addition to these contradictions, the ALJ noted that, though Plaintiff had not sought mental health counseling "allegedly due to financial difficulties," he had acknowledged that he was aware that low-cost services were available.  He noted that Plaintiff had discontinued prescribed medications at times, despite medical evidence indicating that his functioning and overall condition improved significantly with appropriate treatment.  The ALJ cited Plaintiff's "poor work history throughout his life" as evidence of a lack of motivation to "return to the workforce," and cited Plaintiff's testimony that he "camped for entire summers and fished regularly until recently" as inconsistent with his testimony that he "had little energy or little interest in activities."

These are clear and convincing reasons for concluding that Plaintiff was not wholly credible. The ALJ's assertion that Plaintiff made many inconsistent statements is fully supported by substantial evidence in the record, and provided the strongest support for the ALJ's credibility determination. See, e.g., Tommasetti, 533 F.3d at 1040 (inconsistent and less than candid statements support adverse credibility finding). Though Plaintiff had financial difficulties, the ALJ could reasonably conclude that, given his awareness of low-cost services that were available, Plaintiff's failure to seek mental health counseling discredited his allegations as to the severity of his mental problems. See Fair v. Bowen, 885 F.2d 597, 603-04 (9th Cir. 1989). He could also reasonably conclude that financial difficulties did not fully account for Plaintiff's failure to follow prescribed treatments, and cast doubt on his allegations as to the severity of his symptoms and limitations. See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (unexplained failure to seek treatment/follow prescribed treatment relevant bases for discounting claimant's credibility). In addition, evidence that Plaintiff had performed at least part-time work supported both the ALJ's conclusion that Plaintiff was less impaired than he alleged and the conclusion that his testimony concerning his work history was not reliable. Moreover, the ALJ could reasonably conclude that Plaintiff's poor work record in general demonstrated a lack of motivation to return to the work force that reflected poorly on his credibility. See Thomas v Barnhart, 278 F.3d 947, 959 (9th Cir. 2002)(ALJ could conclude poor work record reflected lack of motivation, undermined claimant's testimony regarding inability to work).

The ALJ provided clear and convincing reasons for concluding that Plaintiff was not wholly credible, and substantial evidence in the record supported his credibility determination. Accordingly, his credibility determination should not be set aside here.

OPINION AND ORDER - 17

2. <u>**ALJ's Assessment of Treating and Examining Doctors' Opinions**</u>

A. <u>**Evaluating Medical Opinion**</u>

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are given greater weight than the opinions of other physicians.  <u>Rodriguez v. Bowen</u>, 876 F.2d 759, 761-62 (9th Cir. 1989).  An ALJ must provide clear and convincing reasons for rejecting a treating physician's uncontroverted opinions,  <u>Lester v. Chater</u>, 81 F.2d 821, 830-31 (9th Cir. 1995), and must provide "specific, legitimate reasons . . . based upon substantial evidence in the record" for rejecting opinions of a treating physician which are contradicted.  <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).

The opinions of an examining physician are entitled to greater weight than the opinions of a non-examining physician.  <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990).  An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, <u>id.</u>, and must provide specific and legitimate reasons which are supported by substantial evidence in the record for rejecting opinions of an examining physician that are contradicted by another physician.  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995).

B. <u>**Analysis**</u>

1. <u>**Dr. Smolen**</u>

As noted above, Dr. Smolen, an examining psychiatrist, reported that Plaintiff had an essential tremor which caused his body to shake  "pretty much all of the time," and diagnosed a generalized anxiety disorder and major depression, recurrent, mild to moderate.  Dr. Smolen opined that Plaintiff's tremor "could put people off" because most people knew that tremors were associated with alcoholism, though Plaintiff's tremors were not.  She opined that Plaintiff could

OPINION AND ORDER - 18

"remember and understand and concentrate and attend," and thought that he could not "get along well with people on a mental basis" at that time.

The ALJ summarized Dr. Smolen's report in considerable detail, but did not mention her opinion that Plaintiff could not get along well with others at that time.  The ALJ asserted that he had given significant weight to Dr. Smolen's assessment because it  was "consistent with the overall record" and accepted "a reasonable amount of subjective reporting" from Plaintiff.

Plaintiff contends that the ALJ erred in failing to address Dr. Smolen's opinion that he could not get along well with people.  He argues that the ALJ "failed to give clear and convincing reasons for failing to credit" Dr. Smolen's "uncontradicted" opinion as to his social functioning, and argues that this error was not harmless because the VE had testified that, with his work history, the inability to get along with others would "probably preclude employment."

I disagree.  The ALJ was not required to provide clear and convincing reasons for rejecting Dr. Smolen's opinion concerning Plaintiff's social functioning because he did not reject that opinion.  The ALJ was clearly aware of Plaintiff's limitations in social functioning, and his RFC restricting Plaintiff's work-related social interaction was not inconsistent with Dr. Smolen's assessment.  Plaintiff's counsel, on the other hand, appeared to overstate Dr. Smolen's opinion as to the severity of Plaintiff's limitations in social interaction when he asked the VE about the vocational prospects of an individual who was "precluded" from getting along well with others.  In questioning the VE, Plaintiff's counsel explicitly noted that he was "changing the word from 'cannot' " which Dr. Smolen had used, "to preclude it [sic] from getting along well with people."  Given counsel's deliberate  use of a term different from the one that Dr. Smolen had used to describe Plaintiff's ability to get along with others, the VE and the ALJ could reasonably conclude that the term "precluded" referred to a greater limitation in social functioning, such as

one requiring elimination of all contact with co-workers, than the examiner had assessed. The ALJ specifically queried the VE concerning the requirements for social interaction in the positions that the VE had identified. He did not err in concluding that his analysis of Plaintiff's RFC accurately reflected the limitation in social function that Dr. Smolen reported, and did not err in relying on the VE's testimony that an individual with Plaintiff's RFC could perform the jobs in question.

## 2. **Dr. John Hein**

The medical records indicate that Dr. Hein saw Plaintiff two times–first when Plaintiff established care on March 25, 2010, and again on September 3, 2010. In the record of Plaintiff's first visit, Dr. Hein indicated that Plaintiff was living in his van and was "trying to file for disability. . . ." Dr. Hein noted that Plaintiff was anxious and had a depressed affect, and stated that he was "functionally disabled due to his anxiety and mood disorder."

In his review of the medical record, the ALJ noted that Plaintiff had told Dr. Hein that he was not taking all of his prescribed medications, that he continued to work part-time in construction, and that he enjoyed camping and fishing. He gave "no weight to the comment in Dr. Hein's records that the claimant was functionally disabled."

Plaintiff contends that the ALJ erred in failing to credit Dr. Hein's statement that Plaintiff was functionally disabled. I disagree. Dr. Hein's declaration that Plaintiff was "functionally disabled" was inconsistent with Dr. Smolen's assessment. Therefore, the ALJ was required to provide specific and legitimate reasons, supported by substantial evidence in the record, supporting his rejection of Dr. Hein's opinion.

The ALJ satisfied that requirement. In his summary of Dr. Hein's records, the ALJ noted that Dr. Hein made no "significant objective findings" during Plaintiff's first visit. A careful

review of the records confirms that, though he observed that Plaintiff was anxious and had a

depressed affect, Dr. Hein made no objective findings concerning the mental impairments upon

which the assertion that Plaintiff was disabled was based.  The ALJ observed that it was not clear

whether Dr. Hein's assertion that Plaintiff was disabled reflected Dr. Hein's own assessment "or

simply repeated it from the claimant's subjective reporting."  Dr. Hein's statement concerning

Plaintiff's disability appears among Dr. Hein's notes concerning information Plaintiff had

provided concerning his living conditions, pending application for disability, and subjective

complaints.  In that context, and in the absence of objective findings concerning Plaintiff's mental

impairments, the ALJ had ample reason to suspect that Dr. Hein's statement regarding Plaintiff's

disability simply reported what Plaintiff himself had said.  In addition, the ALJ correctly noted

that Dr. Hein's "single line" addressing the disability issue referred only to mental health issues,

which were "not Dr. Hein's specialty."  The ALJ further correctly noted that Dr. Hein had

provided "no rationale" supporting the conclusion that Plaintiff was disabled, and correctly

observed that the question of disability is a matter "ultimately . . . reserved to the Commissioner."

The ALJ contrasted this with the  "significant weight" he gave to Dr. Smolen's assessment and

the opinions of non-examining Agency consultants, which he found were "consistent with the

overall evidence of record" and accepted "a reasonable amount of subjective reporting from the

claimant."

    Because a finding of disability involves both medical and vocational components, a

physician's opinion that a claimant is disabled does not establish disability under the Act.

Harman v. Apfel, 211 kF.3d 1172, 1180 (9th Cir. 2000).  Instead, it is the ALJ's responsibility to

resolve conflicts in the testimony and medical record, Edlund v Massanari, 253 F.3d 1152, 1156

(9th Cir 2001), and the court must uphold the Commissioner's decision if, as here, the evidence is

susceptible to more than one rational interpretation, one of which supports the ALJ's decision. Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The ALJ provided sufficient reasons for rejecting the assertion in Dr. Hein's record that Plaintiff's anxiety and mood disorder were disabling.[1] Here, the ALJ noted that Dr. Hein's reference to Plaintiff's disability appeared in only a "single line" in Dr. Hein's treatment records concerning Plaintiff's first visit, and cited the absence of objective medical findings supporting the conclusion that Plaintiff's anxiety and mood disorder were disabling. These were specific and legitimate bases for discounting an opinion that Plaintiff was disabled, and they were fully supported by the record. See Morgan v. Commissioner, 169 F.3d 595, 600-601 (9th Cir. 1999)(ALJ need not accept treating doctor's opinion that is brief, conclusory, and unsupported by objective medical findings); Meanel v. Apfel, 172 F.3d 1172, 1113-4 (9th Cir. 1999)(ALJ may reject conclusory opinions which are inconsistent with balance of record); Batson v. Commissioner, 559 F.3d 1190, 1195 (9th Cir. 2004)(affirming ALJ's rejection of doctor's opinion because it was brief, unsupported, contradicted by other evidence, and based on subjective complaints). Given the context of Dr. Hein's statement that Plaintiff's mental impairments were disabling and the absence of objective findings supporting that conclusion, the ALJ had legitimate reasons for inferring that the statement merely repeated Plaintiff's subjective description of his condition. and for concluding that medical opinions indicating that Plaintiff's mental impairments were not disabling were more consistent with the "overall record."

---

[1] I would reach the same conclusion even if the assertion that Plaintiff was disabled that appears in Dr. Hein's records was not contradicted by Dr. Smolen's assessment.

3. **ALJ's Step Five Analysis**

In order to be accurate, an ALJ's vocational hypothetical presented to a VE must set out all of a claimant's impairments and limitations. E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The ALJ's depiction of a claimant's limitations must be "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). If the assumptions set out in the hypothetical are not supported by the record, a VE's conclusion that a claimant can work does not have evidentiary value. Gallant, 753 F.3d at 1456.

Plaintiff contends that the ALJ's analysis at the fifth step of the disability assessment process did not satisfy the Commissioner's burden of establishing that Plaintiff could perform jobs that existed in substantial numbers in the national economy. He argues that the ALJ's vocational hypothetical did not include all of his limitations, because the ALJ failed to credit Dr. Smolen's opinion that he could not get along well with others. He also argues that the ALJ failed to properly discredit the opinion of Dr. Hein, and that this opinion "compels a finding of disability."

Plaintiff's argument concerning the ALJ's analysis at Step Five adds nothing to Plaintiff's arguments concerning Drs. Smolen and Hein addressed above. For the reasons discussed above, I conclude that the ALJ did not err in his evaluation of Dr. Smolen's assessment, in his evaluation of the VE's testimony concerning the suitability of particular positions in light of Plaintiff's limitations in social functioning, or in his rejection of the assertion that Plaintiff was disabled that appears in the record of Plaintiff's first visit to Dr. Hein. The vocational hypothetical posed to the VE adequately set out Plaintiff's impairments and limitations, and the ALJ could reasonably rely on the VE's testimony that an individual with Plaintiff's functional capacity could perform the jobs the VE identified.

**<u>Conclusion</u>**

The Commissioner's decision is AFFIRMED and this action is dismissed with prejudice.

DATED this 31st day of December, 2013.


                                    _____/s/ John Jelderks_____

                                    John Jelderks

                                    U.S. Magistrate Judge